IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Dennis J. Edwards (M18006),       )
                                  )
                Petitioner,       )
                                  )           Case No. 18 C 1574
        v.                        )
                                  )           Judge John Robert Blakey
Victor Calloway, Warden,          )
Danville Correctional Center,     )
                                  )
                Respondent.       )

## MEMORANDUM OPINION AND ORDER

Petitioner Dennis J. Edwards, a prisoner at the Danville Correctional Center, brings this *pro se* habeas corpus action pursuant to 28 U.S.C. § 2254, challenging his 2010 first degree murder conviction from the Circuit Court of Cook County. The Court denies the petition [1] on the merits, and declines to issue a certificate of appealability.

## I.    Background[1]

After a mistrial, the People of Illinois retried Petitioner on first degree murder charges. [12-2], *Illinois v. Edwards*, No. 2013 IL App (1st) 110308-U, 2013 WL 5494055, at *1 (Ill. App. Ct. Sept. 30, 2013). The evidence on retrial showed that the

---

[1] The Court draws the following factual history from the state court record. *See* [12]. State court factual findings, including facts set forth in state court opinions, have a presumption of correctness, and Petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C § 2254(e)(1); *Tharpe v. Sellers*, 138 S. Ct. 545, 546 (2018); *Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020) (citations omitted). Petitioner has not made such a showing.

murder in this case occurred during the early morning of March 6, 2004, outside of Petitioner's apartment in Chicago's Hyde Park neighborhood. *Id.* At approximately 1:00 or 2:00 that morning, eyewitness Rachel Schram was walking down the street experiencing heroin withdrawal. *Id.* She testified at Petitioner's trial that the victim (whom Schram had never met before) drove up to her and invited her to get into her car. *Id.* The victim then gave Schram $20 dollars to buy heroin, and the two women drove to Petitioner's apartment. *Id.*

Once at the apartment building, the victim repeatedly rang the apartment door buzzer and banged on doors and windows until someone let them into the building. *Id.* The victim then spent "a good five minutes" knocking on Petitioner's apartment door before he let her and Schram in. *Id.*

Upon entering the apartment, Schram saw Petitioner and another woman, and she observed drug paraphernalia and empty bottles. *Id.* The victim told Schram to go into the bathroom because she wanted to talk to Petitioner. *Id.* Schram complied and used heroin and crack cocaine while in the bathroom. *Id.* Approximately 10 minutes later, Schram returned from the bathroom to see the victim reach into the other woman's purse and take that woman's ID. *Id.* The victim, Petitioner, and the other woman, then argued for 10 to 15 minutes. *Id.* During this period, the victim refused to return the ID and a set of keys, which the victim had also apparently taken. *Id.*

The argument eventually escalated into a physical confrontation. According to Schram, the victim broke through Petitioner's locked bedroom and started

2

destroying Petitioner's possessions. *Id*. The victim then attempted to leave the apartment via the backdoor but was fumbling with a padlock on an outside metal gate when Petitioner grabbed the victim's arm. *Id*. He pushed and shoved her, trying to restrain her from leaving the apartment. *Id*.

The victim eventually freed herself and exited into the backyard. *Id*. Petitioner pursued the victim into the yard, demanding the return of the stolen keys; the victim responded that she did not have the keys. *Id*. During this interaction, Schram saw the victim hit Petitioner eight or nine times with her oversized purse and saw Petitioner punch the victim. *Id*.

Petitioner then grabbed the victim, who fell face first on the ground with Petition standing over her. *Id*. Schram testified that, at this point, she had to look away, because Petitioner "was choking the victim, he was strangling the victim." *Id*. Schram heard the victim, "making noises, attempting to talk, like somebody who is being choked, and trying to have that person to stop and get off of her." *Id*. Schram grabbed Petitioner by the arm, telling him "stop, you're going to kill her," but Petitioner did not stop. *Id*. Schram then yelled for help and asked for someone to call 911. *Id*. She also went back into the apartment to look for the keys but did not find them. *Id*. Schram returned to find Petitioner still on top of the victim choking her, but, by then, the victim had stopped making noise. *Id*.

Schram admitted at trial that she had been using heroin and crack cocaine for seven years; that she had previously pled guilty in two different cases to possession

3

of a controlled substance; and that she had previously pled guilty, on five separate occasions, to prostitution. *Id*. at *1–2.

Two Chicago police officers and a University of Chicago police officer responded to Petitioner's apartment at approximately 3:00 a.m. on March 6, and they also testified at Petitioner's trial. *Id*. at *2. The officers testified that they found Petitioner straddling the victim when they arrived; the victim was face down, and Petitioner had her placed in a chokehold with the victim's neck in the crook of Petitioner's right elbow. *Id*. at *2. It appeared to the officers that Petitioner was placing pressure on the victim's neck. *Id*. One of the officers yelled "stop, police," and Petitioner responded by dropping the victim, who fell face first into the dirt. *Id*. Two of the officers grabbed Petitioner, forced him to the ground, and handcuffed him. *Id*. The officers did not attempt to resuscitate the victim as she appeared to be dead, with her tongue hanging out of her mouth. *Id*.

A Cook County Assistant State's Attorney took a videotaped confession from Petitioner following his arrest, and the prosecution played the tape for the jury at Petitioner's trial. *Id*. at *3. The tape showed that Petitioner received his *Miranda* warnings, and voluntarily agreed to speak to the ASA. *Id*. Petitioner explained in the videotape that he tackled the victim because she had taken keys from his apartment and was refusing to give them back. *Id*. He conceded that he used a chokehold on the victim, and that he "wrestled" with her for a "good couple minutes." *Id*. He further admitted that the victim was face down in the dirt, and that he did not release his chokehold as she kept "squirming"; he stated that he released the

4

chokehold once she stopped squirming, thinking she was either tired or unconscious. *Id*.

At Petitioner's retrial, another police officer testified about an unrelated encounter with Petitioner on September 24, 2008. The officer testified that, on that date, he and his partner arrested Petitioner for drunk driving following a car accident on Chicago's southside. *Id*. The officer testified that, although Petitioner invoked his *Miranda* rights following his arrest, Petitioner made numerous unprompted, spontaneous statements, at one point screaming: "I've got a murder rap man. Please tell the Judge I did it. March 6, 2004, 5138 Kenwood" and "where I choke her a** out." *Id*. The officer was alone in a bathroom with Petitioner when he made this statement. *Id*. At trial, Petitioner denied making this statement. *Id*. at *5.

Petitioner testified on his own behalf at trial. *Id*. at *4. He confirmed that Schram and the victim came to his apartment, that Petitioner initially refused them entry, but he eventually let them in after persistent knocking; he also confirmed that he got into a dispute with the victim after she took the other woman's ID and keys, and they ultimately fought outside. *Id*. Petitioner testified that the victim went "spacey" after consuming a large amount of crack cocaine, that she hit him with her purse multiple times, and then dropped the purse to punch him "throwing combinations at him like Muhammad Ali." *Id*. He admitted he wrestled the victim to the ground but claimed that he never intended to kill her. *Id*. He also conceded that he had served in the Army Reserves as a personal action specialist and was trained in combat, though he denied knowing hand-to-hand combat. *Id*.

5

The Cook County medical examiner testified that she performed an autopsy on the victim's body on the day of her death. *Id*. at *2. According to the medical examiner, the victim was 6'1" tall and weighed 284 pounds, and the toxicology tests showed that the victim had cocaine in her system and that her blood alcohol level was one and a half times the legal limit. *Id*. The victim also had an enlarged heart, consistent with a history of high blood pressure. *Id*. The medical examiner opined that the victim died from strangulation, not from a heart attack or a high blood pressure episode. *Id*.

The medical examiner testified that she observed two injuries on the victim's face: a scratch less than a half of an inch long and a bruise approximately four inches long and four-tenths of an inch wide. *Id*. The victim did not have any signs of injury to her neck, but the examiner explained that it is "very common" to not see any injuries on the body from a "chokehold" or "sleeper hold," as this type of hold involves putting a forearm around a person's neck while using the other arm to place pressure on the neck. *Id*. The victim did, however, have mud and dirt present in and around her mouth and teeth. *Id*. Additionally, the victim's brain was swollen, a natural consequence of a chokehold. *Id*.

Petitioner called his own forensic pathology expert at trial to testify that the victim died of natural causes, not strangulation. *Id*. Petitioner's expert explained that one would expect to see signs of compression of the blood vessels or airways if the victim had died of strangulation, but no such signs were present in this case. *Id*. Petitioner's expert opined that the victim died of exhaustion of the heart caused by

6

her morbid obesity, cocaine and alcohol use, and physical activities such as banging on the apartment door for multiple minutes and getting into a verbal altercation with Petitioner prior to her death. *Id.* Petitioner's expert conceded on cross examination that a person put in a chokehold might not show any signs of injuries. *Id.*

At the retrial, the jury found Petitioner guilty of murder. *Id.* at *8. The trial court sentenced him to 22 years of imprisonment. *Id.* The Illinois Appellate Court affirmed the conviction and sentence on direct appeal, *id.* at *18, and the Illinois Supreme Court denied Petitioner's petition for leave to appeal (PLA). [12-28], *Illinois v. Edwards*, No. 116891, 3 N.E.3d 797 (Ill. Jan. 29, 2014).

Petitioner then brought a postconviction petition, but this too was denied by the trial court. [12-3], *Illinois v. Edwards*, No. 2016 IL App (1st) 140889-U, 2016 WL 7436140, at *2-*3 (Ill. App. Ct. Dec. 22, 2016). The appellate court affirmed the dismissal, *id.* at *3, and the Supreme Court of Illinois denied Petitioner's PLA. [12-25], *Illinois v. Edwards*, No. 122156, 89 N.E.3d 758 (Ill. Sept. 27, 2017) (Table).

Petitioner now brings the instant habeas corpus petition before this Court. [1]. [2] As an aside, the petition indicates that Petitioner filed a successive postconviction petition, which was pending in the state courts when he filed his habeas corpus petition in this Court. *Id.* at 5. Respondent's answer does not address a successive postconviction petition, *see* [11], and the state court record provided by Respondent includes proceedings just on the direct appeal and a single

---

[2] After the parties fully briefed the instant habeas corpus petition, Petitioner filed a document entitled "Twelve Grounds." *See* [23]. This document simply restates the claims raised in the petition.

postconviction petition. *See* [12]. As explained below, however, the existence of any successive postconviction petition is immaterial, as the Court resolves the instant habeas corpus petition on other grounds.

The Court now turns to Petitioner's instant claims.

## II. Analysis

### A. Claim One: Challenge to Officer's Testimony

In claim one, Petitioner alleges that the officers presented conflicting testimony regarding what they observed when they arrived at the murder scene. He points out that the officers' testimony changed between the original trial (which ended in a mistrial) and the second trial, where he was convicted. He claims that the officers' testimony would have been further impeached by documents that he did not properly receive in discovery, and his lawyer never brought up these issues.

Respondent contends that this claim is procedurally defaulted because Petitioner failed to properly raise it before the state courts. To preserve a claim for federal habeas corpus review, a prisoner must fairly present the claim by setting forth the operative facts and applicable law to the state courts. *Johnson v. Hulett*, 574 F.3d 428, 431 (7th Cir. 2009). The claim must be presented through one complete round of state court review, including via a PLA before the Supreme Court of Illinois. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845–46 (1999); *Weaver v. Nicholson*, 892 F.3d 878, 886 (7th Cir. 2018).

On direct appeal, Petitioner argued that: (1) the trial court erred in answering a jury question regarding the legal definition of "great bodily harm," or, alternatively,

defense counsel was ineffective for failing to object to the trial court's answer; (2) the prosecution improperly attacked the credibility of the defendant and defense expert witness during closing and rebuttal arguments; and, (3) the trial court erred in allowing the state to produce statements that were irrelevant, prejudicial, and damaging to Petitioner's character. [12-24]. His direct appeal PLA raised the great bodily harm and challenge to evidence regarding his character (claims one and three on direct appeal before the state appellate court), and also raised a new issue challenging the failure to consider evidence from his mistrial regarding the police officers. [12-27] at 5–6.

In his postconviction appeal, he raised a single issue that the prosecution allegedly showed his videotaped statement to the jury out of the presence of the judge, defense counsel, and Petitioner. [12-29]. He raised this same single issue in his postconviction PLA. [12-34].

As the record shows, Petitioner failed to raise claim one through one complete round of state court review as required. Petitioner did raise a portion of this claim in his direct appeal PLA. But raising an issue in a PLA in the first instance does not properly preserve the issue. *Meyers v. Pfister*, No. 17 C 5687, 2020 WL 4704764, at *8 (N.D. Ill. Aug. 13, 2020) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)). Nor does the referenced but unsubstantiated successive postconviction petition save this claim. *See* [1] at 5. By Petitioner's own admission, the successive petition involves the alleged failure to obtain medical reports that he later discovered through an Illinois Freedom of Information Act request; this has nothing to do with the issue

9

raised in claim one, concerning the accuracy of the officers' trial testimony as to their observations. Claim one is defaulted.

Petitioner cannot demonstrate cause and prejudice or a fundamental miscarriage of justice to excuse his default as to claim one. Regarding cause and prejudice, cause is an "'objective factor, external to [Petitioner] that impeded his efforts to raise the claim in an earlier proceeding.'" *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013) (quoting *Smith v. McKee*, 596 F.3d 374, 382 (7th Cir. 2010)). Examples of cause include: (1) interference by officials making compliance impractical; (2) the factual or legal basis was not reasonably available to counsel; or, (3) ineffective assistance of counsel. *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (citing *McCleskey v. Zant*, 499 U.S. 467 (1991)).

Petitioner argues that his attorneys failed to properly preserve the issue at trial and on appeal. However, an ineffective assistance of counsel argument asserted to excuse a default must, itself, be properly preserved in the state courts. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009). Petitioner has not exhausted any ineffective assistance of counsel argument to excuse the default of this claim.

This leaves the fundamental miscarriage of justice—or actual innocence—gateway to excuse Petitioner's default. To show actual innocence to excuse a default, Petitioner must demonstrate that "'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggins v. Perkins*, 569 U.S. 383, 386 (2013) (quoting *Schlup v. Delo*, 513 U.S.

10

298, 329 (1995)).  This is a "demanding" and "seldom met" standard.  *McQuiggins*, 569 U.S. at 386 (citing *House v. Bell*, 547 U.S. 518, 538 (2006)).  Petitioner must present new, reliable evidence that was not presented at trial—such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— to make a credible claim of actual innocence.  *House*, 547 U.S. at 537 (citing *Schlup*, 513 U.S. at 324); *see McDonald v. Lemke*, 737 F.3d 476, 483-84 (7th Cir. 2013) ("[A]dequate evidence is 'documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who places him out of the city, with credit card slips, photographs, and phone logs to back up the claim.'") (quoting *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005)).

Here, Petitioner has proffered no such evidence.  And, indeed, the People presented overwhelming evidence of Petitioner's guilt.  Eyewitness Rachel Schram testified that Petitioner and the victim had an altercation, which ended with Petitioner choking the victim, standing over her lifeless body.  The police testified that, when they arrived at Petitioner's apartment, they found Petitioner straddling the victim's body, still holding her in a chokehold.  And Petitioner confessed to the horrific murder, not once, but twice: once in a videotaped confession immediately after his arrest and again years after the murder while he was under arrest for DUI. Quite simply, Petitioner murdered the victim.

That Petitioner claimed he did not intend to kill the victim makes no difference. To be found guilty of murder in Illinois, a defendant must kill another person through an action that creates a strong probability of death or great bodily harm to another

that results in death. 720 ILCS 5/9-1(a)(3). Petitioner admitted to placing the victim in a chokehold, and several eyewitnesses testified that they observed Petitioner choking the victim.

Nor does the victim's morbid obesity excuse Petitioner, because a "defendant takes his victim as he finds [her]." *Illinois v. Brackett*, 510 N.E.2d 877, 881 (Ill. 1987). Petitioner is responsible for the victim's murder as long as there was sufficient proof that his actions contributed to the victim's death despite her preexisting health condition. *Id.* And the jury heard ample evidence that Petitioner caused the victim's death. Schram testified that the victim was alive prior to Petitioner tackling her to the ground and placing her in a chokehold, and that Petitioner choked the life from her until the police ordered Petitioner to release; the police testified that when Petitioner released the victim as ordered, her lifeless body thumped to the ground. Petitioner cannot excuse his procedural default under either cause and prejudice, nor fundamental miscarriage of justice.

Finally, even if Petitioner still had an available state court remedy through a successive postconviction petition, the Court could still deny the claim on the merits. 28 U.S.C. § 2254(b)(2). As explained above, the evidence of Petitioner's guilt was overwhelming. Any alleged error raised in claim one would have no substantial or injurious effect on the verdict in light of this overwhelming evidence. *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993).

12

### B.     Claim Two: Failure to Call Other Witnesses

In claim two, Petitioner alleges that his trial counsel rendered constitutionally ineffective assistance for failing to call witnesses on his behalf.     Specifically, Petitioner claims counsel should have called: (1) Penny Strickland, the other woman who was in the apartment during the murder; and, (2) Cheryl Fields, who Petitioner claims witnessed the incident from outside the apartment.     Respondent correctly notes that Petitioner failed to present this claim through one complete round of state court review as required.     *O'Sullivan*, 526 U.S. at 845–46.     Furthermore, the alleged pending successive postconviction petition has no connection to this claim.     Claim two, therefore, is procedurally defaulted.     As with claim one, Petitioner cannot excuse the procedural default through either cause and prejudice or by demonstrating a fundamental miscarriage of justice.

Beyond the default, claim two also lacks merit.     Petitioner fails to meet his burden of demonstrating that either witness would have provided testimony favorable to him.     *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003); *Wright v. Gramley*, 125 F.3d 1038, 1044 (7th Cir. 1997).     Nor does the Court have any basis to find that, in light of the other evidence (including the other witnesses' testimony and Petitioner's confessions), the failure to present testimony from Strickland and Fields had a substantial and injurious effect on the verdict.     *Brecht*, 507 U.S. at 631.

### C.    Claim Three: Challenge Regarding Petitioner's Expert

In claim three, Petitioner raises two arguments regarding the expert who testified on his behalf at trial.    He claims that: (1) the prosecution wrongfully attacked Petitioner's expert, suggesting that he was paid extra money to lie on Petitioner's behalf; and (2) Petitioner's expert, who relied upon the state's expert report and other relevant materials when forming his opinion, did not receive all necessary documentation.

Regarding the prosecution's comment at trial that the expert's pay impacted his opinion, the state appellate court on direct appeal found that Petitioner failed to preserve this claim with a requisite timely objection at trial and a post-trial motion. *Edwards*, No. 2013 IL App (1st) 110308-U, 2013 WL 5494055, at *13.    Thus, as Respondent correctly notes, this issue is procedurally defaulted.    *See Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010).    Moreover, as explained in resolving claims one and two, Petitioner cannot excuse his procedural default by showing either cause and prejudice or a fundamental miscarriage of justice.    Indeed, the record shows no error in the prosecutor's comment.

Regarding the alleged failure to provide all necessary reports to Petitioner's expert, Petitioner asserts that he is presently exhausting this issue in his successive postconviction petition proceedings.    But, in any case, the underlying claim lacks merit, and the Court may, therefore, deny the claim at this time.    28 U.S.C. § 2254(b)(2).

14

As explained above, any alleged error would not have a substantial and injurious effect on the verdict in light of the overwhelming evidence as demonstrated by both Petitioner's confessions and the multiple eyewitnesses who testified against Petitioner. *Brecht*, 507 U.S. at 631. The Court denies claim three.

### D. Claim Four: Consent to Videotape Confession

Petitioner argues in claim four that the videotaped confession he provided after his arrest was obtained without his consent. Petitioner also alleges that the videotape confession was altered without his permission, as he knows that he talked for more than 30 minutes on camera, but the tape recording is only 18 minutes long. He points out that the ASA's hands were underneath the table for most of the interview, leading Petitioner to believe that the ASA was actively editing his confession while he was delivering it.

Petitioner failed to raise this claim on direct appeal or in his postconviction petition, and he does not claim to have raised this issue in any successive post-conviction petition. Thus, as Respondent correctly notes, the claim is procedurally defaulted. *O'Sullivan*, 526 U.S. at 845–46. Moreover, for the reasons explained above, Petitioner cannot excuse the default through either cause and prejudice or by showing a fundamental miscarriage of justice. Finally, as explained above, any alleged error would not have a substantial and injurious effect on the verdict in light of the overwhelming evidence of Petitioner's guilty (including his other confession and the testimony of multiple eyewitnesses). *Brecht*, 507 U.S. at 631. The Court denies claim four.

15

### E. Claim Five: Petitioner's Confession following his DUI Arrest

In claim five, Petitioner challenges the admission of the 2008 statement he made to the officer in the police station bathroom after his DUI arrest. He denies confessing and claims that the officer lied on the stand about the confession. Petitioner further alleges that his rights were violated by the introduction of the statement at his trial, and that his lawyers rendered ineffective assistance for failing to challenge the statement.

As with the prior claims, Petitioner failed to raise this claim through one complete round of state court review as required. *O'Sullivan*, 526 U.S. at 845–46. Furthermore, the alleged pending successive postconviction petition has no connection to this claim. As such, the claim remains procedurally defaulted, and Petitioner cannot excuse the procedural default through either cause and prejudice or a fundamental miscarriage of justice.

Beyond the default, any alleged error would not have a substantial and injurious effect on the verdict in light of the overwhelming evidence as demonstrated by Petitioner's other confession and the multiple eyewitnesses who testified against him. *Brecht*, 507 U.S. at 631. The Court denies claim five.

### F. Claim Six: Ineffective Assistance of Counsel Resulting in Mistrial

Petitioner next claims ineffective assistance of counsel during his first trial that resulted in a mistrial. Once again, however, Petitioner failed to present this claim through one complete round of state court review as required, and he does not

claim to have raised this issue in any successive postconviction petition. *O'Sullivan*, 526 U.S. at 845–46. The claim thus is procedurally defaulted, and Petitioner cannot excuse the procedural default through either cause and prejudice or a fundamental miscarriage of justice.

Beyond the default, Petitioner cannot demonstrate prejudice resulting from the mistrial. As a result, the Court denies claim six.

### G. Claim Seven: Improper Presentation of Video

In claim seven, Petitioner asserts that the prosecution improperly played his videotaped confession to the jury *ex parte,* outside his presence and the presence of his attorney and the trial judge. To support this claim, Petitioner offered an affidavit from his brother, who represented that he was present when the prosecution showed the video to the jury, even though "not all the jurors were watching the video." [12-22] at 79.

On postconviction review, the state appellate court (the last state court to address this claim on the merits) rejected Petitioner's claim because the record refuted the brother's affidavit. [12-3] at 6. The state appellate court concluded that it was "highly improbable at best that the court would have adjourned, leaving the jury alone in the courtroom with an ASA" while waiting for defense counsel to arrive, and that the brother's allegation was "fanciful," given that the videotape was admitted into evidence anyway, obviating any possible motive to show the tape *ex parte* to the jury. *Id*.

17

Because the state court's resolution of this claim is predicated upon a factual finding that the prosecution did not show the video *ex parte* to the jury as Petitioner's brother alleged, Petitioner has the burden of demonstrating that the state appellate court decision was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2). He has not met this burden.

Even though the state appellate court did not hold an evidentiary hearing on the issue, the trial court record shows that, in fact, defense counsel arrived late to court on the day in question because of a conflict in another courtroom, *see* [12-15] at 3–6. Thus, the trial did not proceed at 10:30, as scheduled on that day; rather, the trial resumed after noon, when defense counsel appeared. Likewise, the record otherwise fails to undermine the state appellate court's factual finding regarding the incredibility of the brother's claim that an experienced trial judge allowed the jury to be alone in the courtroom with the prosecutor, or that an experienced prosecutor ever showed a piece of evidence to the jury *ex parte*.

Furthermore, to prevail on this claim, Petitioner must demonstrate that the state court ignored the clear and convincing weight of the evidence. *Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013). Petitioner here fails to claim that the state court ignored the weight of the evidence; rather, the record (other than Petitioner's brother's affidavit) remains silent on the point. As such, Petitioner fails to show that the state court made an unreasonable factual determination.

18

Petitioner's claim fails to warrant an evidentiary hearing before this Court. To obtain an evidentiary hearing, Petitioner must show, among other points, that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for [the] constitutional error, no reasonable factfinder would have found [Petitioner] guilty beyond a reasonable doubt." 28 U.S.C. § 2254(e)(2)(B). Petitioner cannot meet this standard because even if the prosecutor showed the video to the jury as Petitioner's brother alleges, the evidence of Petitioner's guilt was overwhelming in light of his other confession and the uncontroverted eyewitness testimony; and, in any event, the record confirms that the trial court properly admitted the same video into evidence during trial anyway. Every witness to testify, including Petitioner, testified that Petitioner choked the victim. Thus, a reasonable factfinder would have found Petitioner guilty even without his videotaped confession being presented (*ex parte* or otherwise).

In short, assuming arguendo that the prosecutor showed the video *ex parte* as Petitioner alleges, his underlying claim still lacks merit. *Ex parte* communications with jurors about a matter pending before the jury are presumed to be prejudicial, but the presumption can be rebutted. *United States v. Turner*, 836 F.3d 849, 867 (7th Cir. 2016); *Remmer v. United States*, 347 U.S. 227, 229 (1954). Ultimately, the question is whether the *ex parte* communication had an improper influence on the jury's verdict. *Turner*, 836 F.3d at 867. And because this Court is considering the issue via a habeas corpus petition, it must apply the *Brecht* standard to this question as well. *Davis v. Ayala*, 576 U.S. 257, 270 (2015). Thus, the question is whether

19

the alleged improper communication tainted the verdict when viewed through the lens of *Brecht*. *Hall v. Zenk*, 692 F.3d 793, 805 (7th Cir. 2012). It did not.

Although showing evidence to the jury in this alleged matter would certainly be improper (if such a showing occurred), the videotape remained admissible, and ultimately was admitted, without objection. As such, the jury unquestionably saw the evidence during the trial, in the presence of the judge, the attorneys, and Petitioner. Neither Petitioner nor his brother claimed any improper contact between the prosecutor and the jury, or any attempt to color or emphasize the evidence in any manner. Thus, at most, Petitioner is alleging that the prosecution was able to show Petitioner's confession to the jury twice. But given that the jury properly viewed the confession at trial, Petitioner cannot show the requisite prejudice. Moreover, as stated numerous times already, the evidence of Petitioner's guilt in this case was overwhelming. Claim seven is denied.

### H.    Claim Eight: The Prosecutor's Closing Argument

In claim eight, Petitioner argues that the prosecution wrongfully suggested in closing argument that he had learned hand-to-hand combat while a member of the Army National Guard. Once again this claim is procedurally defaulted because Petitioner failed to properly object to the issue at trial, *Edwards*, No. 2013 IL App (1st) 110308-U, 2013 WL 5494055, at *13; *Kaczmarek*, 627 F.3d at 592. As explained above, Petitioner cannot excuse his procedural default through either cause and prejudice or fundamental miscarriage of justice.

20

Beyond the default, the claim also lacks merit. As the state appellate court explained, the prosecutor had a right to comment on Petitioner's credibility because Petitioner testified at trial, and defense counsel argued in closing that Petitioner testified truthfully. *Edwards*, No. 2013 IL App (1st) 110308-U, 2013 WL 5494055, at *16. Petitioner testified that he had not been taught hand-to-hand combat while in the Army Reserve. The prosecutor responded in closing argument that Petitioner, "Army Reservist, wants you to believe they don't teach hand-to-hand combat in the military anymore. Ladies and Gentlemen, he knew exactly what he was doing when he put [the victim] into that chokehold. He was killing her. That was his intent." *Id.*

If a defendant puts his credibility at issue by testifying at trial, a prosecutor may comment on the defendant's credibility as long as the comments are supported by the evidence. *United States v. Turner*, 651 F.3d 743, 752 (7th Cir. 2011). Here, Petitioner testified at trial and the prosecutor permissibly questioned his testimony based upon common sense and a basic knowledge of military training. The record contains no error.

Moreover, Petitioner cannot demonstrate that any alleged error would have had a substantial and injurious effect on the verdict in light of the overwhelming evidence of Petitioner's guilt. *Brecht*, 507 U.S. at 631. Claim eight is denied.

### I.    Claim Nine: Failure to Provide Reports

In claim nine, Petitioner alleges that he did not receive various police investigative reports regarding potential witnesses Strickland and Fields; nor did he

21

receive certain reports from the medical examiner who conducted the victim's autopsy. Although Petitioner contends that he raised this claim in his pending successive postconviction petition, the Court nonetheless rejects it today because it lacks merit. 28 U.S.C. § 2254(b)(2).

Failure to disclose relevant reports could implicate Petitioner's rights under *Brady v. Maryland*, 373 U.S. 83 (1963). To prove a *Brady* violation, however, Petitioner would have to show, among other things, that the disputed evidence was both material and favorable to the accused, and that the People possessed it and suppressed it, thereby resulting in prejudice to the Petitioner. *Strickler v. Greene*, 527 U.S. 263, 281 (1999). Petitioner does not explain how the allegedly suppressed reports would have exonerated him or even how they would have helped him. Furthermore, given the overwhelming evidence of Petitioner's guilt, including the testimony of multiple eyewitnesses and Petitioner's own confessions, the record provides no basis to find that use of the reports by the defense could have affected the verdict; nor can the Court discern how an additional report from the medical examiner could have changed the finding that Petitioner choked the victim. Because Petitioner has not (and cannot) demonstrate the required elements of a *Brady* claim, the Court denies claim nine.

## J. Claim Ten: Challenges to Trial Court Rulings

Petitioner next challenges the trial court rulings denying his requests: (1) to bar the introduction of his confessions at trial; (2) for more time to find witnesses; and (3) to introduce evidence about the victim, including her criminal and drug

22

history and her comparatively larger, heavier stature. Petitioner failed to present this claim through one complete round of state court review as required, and Petitioner does not claim to have raised this issue in his allegedly pending successive post-conviction petition. *O'Sullivan*, 526 U.S. at 845–46. As a result, the claim is procedurally defaulted. For the same reasons detailed above, Petitioner cannot excuse the procedural default through either cause and prejudice or by showing a fundamental miscarriage of justice.

Beyond the default, any error stemming from the alleged denials could not have had a substantial and injurious effect on the verdict in light of the overwhelming evidence as demonstrated by both Petitioner's confessions and the multiple eyewitnesses who testified against him. *Brecht*, 507 U.S. at 631. The Court denies claim ten.

### K.    Claim Eleven: Great Bodily Harm Instruction

Petitioner next challenges the trial court's handling of the jury's question regarding the definition of great bodily harm in the jury instructions. The appellate court on direct appeal found the issue barred under the doctrine of invited error, and also forfeited on appeal because Petitioner did not lodge the required timely objection in the trial court. *Edwards*, No. 2013 IL App (1st) 110308-U, 2013 WL 5494055, at *9. The state appellate court's findings of both invited error and forfeiture represent adequate and independent state grounds to deny this claim, and the claim is therefore procedurally defaulted here. *Richardson v. Griffin*, 866 F.3d 836, 842 (7th Cir. 2017) (invited error); *Kaczmarek*, 627 F.3d at 592 (timely objection); *Coleman v. O'Leary*,

23

845 F.2d 696, 701 (7th Cir. 1988) (invited error). Furthermore, the alleged pending successive postconviction petition has no connection to this claim. The claim is procedurally defaulted, and, consistent with the Court's prior analysis, Petitioner cannot excuse the procedural default through either cause and prejudice or fundamental miscarriage of justice.

Beyond the default, the claim also is meritless. A challenge to a jury instruction raises a non-cognizable state law issue unless the instruction violates federal due process. *Perruquet v. Briley*, 390 F.3d 505, 510 (7th Cir. 2004). And due process is implicated only when the state instruction violation results in the conviction of an innocent person. *Id*. That did not happen here. Claim eleven is denied.

### L. Claim Twelve: Witness Rachel Schram's Credibility

Petitioner's final claim attacks witness Rachel Schram. He argues that Schram lied during her testimony. He believes someone coached her on how to testify and also that his attorney rendered ineffective assistance for failing to challenge Schram's testimony. Petitioner argues there are inconsistencies in her testimony, and Schram was purportedly unable to observe the events as she testified because she was high on drugs.

Here again, Petitioner failed to present this claim through one complete round of state court review as required. *O'Sullivan*, 526 U.S. at 845–46. Furthermore, the alleged pending successive postconviction petition has no connection to this claim.

The claim thus is procedurally defaulted, and Petitioner cannot excuse the procedural default through either cause and prejudice or fundamental miscarriage of justice.

This claim also lacks merit. A federal court evaluating a state conviction via a habeas corpus proceeding may not reexamine the credibility of witnesses. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *Julian v. Bartley*, 495 F.3d 487, 494 (7th Cir. 2007). Claim twelve is denied.

Having considered all of Petitioner's claim, the Court denies the habeas corpus petition [1] on its merits.

## III.    Certificate of Appealability and Notice of Appeal Rights

The Court declines to issue a certificate of appealability. Petitioner cannot make a substantial showing of the denial of a constitutional right; i.e., reasonable jurists would not debate, much less disagree, with this Court's resolution of Petitioner's claims. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

Petitioner is advised that this is a final decision ending his case in this Court. If Petitioner wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Petitioner need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. If Petitioner wishes the Court to reconsider its judgment, however, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e).

25

The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

## IV.    Conclusion

The Court denies the petition for a writ of habeas corpus [1] on the merits and declines to issue a certificate of appealability. The Court directs the Clerk to: (1) terminate Respondent Victor Calloway and replace him with Petitioner's current custodian, Kim Larson, Warden, Danville Correctional Center; (2) alter the case caption to *Edwards v. Calloway*; and (3) enter a judgment in favor of Respondent and against Petitioner. Civil Case Terminated.

Dated: September 21, 2020

Entered:

John Robert Blakey
United States District Judge

26